UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ESTATE OF DAVID STONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:15-cv-00015-TWP-TAB |
| | ) |
| PEOPLES INSURANCE AGENCY, LLC, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Peoples Insurance Agency, LLC ("Peoples") ([Filing No. 43](#)). Soon after a fire destroyed the house and personal property, Plaintiff Estate of David Stone ("the Estate") learned that the previous insurance policy had not been renewed and a new insurance policy had not been procured. As a result, no insurance coverage was available to pay for the loss resulting from the fire. The Estate filed this action for declaratory and injunctive relief, seeking damages under a claim for breach of duty against Peoples, Branch Banking and Trust Company, and Westfield Insurance Company.[1] Peoples filed a motion for summary judgment, asserting that it owed no duty to the Estate, and thus, no claim for breach of duty against it can exist. For the reasons stated below, Peoples' Motion for Summary Judgment is **granted**.

### I.   BACKGROUND

The following material facts are not necessarily objectively true; but, as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the Estate as the non-

---

[1] All claims, counterclaims, and cross-claims against Branch Banking and Trust Company (David Stone's mortgagee) and Westfield Insurance Company (the insurance company) have been dismissed with prejudice by stipulation of the parties. See [Filing No. 38](#), [Filing No. 46](#), and [Filing No. 64](#).

moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On December 9, 2012, David L. Stone and Carolyn R. Stone were issued Westfield Insurance Company "Farm Policy" No. FAB 1 920 308 ("the Policy") covering the Stones' residence located at 4513 Stoneview Drive, Charlestown, Indiana (the "Stone Residence") ([Filing No. 50 at 2](#)).  The Policy had an effective date of December 9, 2012, providing insurance through December 9, 2013.  The Policy was underwritten and procured by Wells Fargo Insurance Services USA, Inc.  *Id.*  Soon after the Policy's effective date of December 9, 2012, Wells Fargo sold the Policy to Peoples.  *Id.*

Cynthia Stone ("Cynthia") was David Stone's daughter-in-law and power of attorney, and she lived at the Stone Residence.  Cynthia also handled the homeowner's insurance for the Stone Residence, opening statements and making quarterly payments online through David and Carolyn Stone's checking account ([Filing No. 50 at 3](#)).

More than a year before the Policy took effect, Carolyn Stone passed away on October 29, 2011.  Two months before the Policy was to expire, David Stone passed away on October 9, 2013.  Cynthia was appointed the personal representative of David Stone's Estate on October 22, 2013.  *Id.*

On October 17, 2013, Westfield Insurance Company issued and mailed to the Stone Residence a "Notice of Intent Not to Renew" the Policy, which referenced the date of notice of October 17, 2013, the Policy number, the Policy expiration date of December 9, 2013, the insurance agent as Peoples, and the insurer as Westfield Insurance Company.  The non-renewal notice explained in bold, capital letters: "**PLEASE BE ADVISED THAT THE ABOVE CAPTIONED INSURANCE POLICY WILL NOT BE RENEWED. YOUR INSURANCE**

**WILL EXPIRE ON THE DATE AND HOUR SPECIFIED ABOVE.**" (Filing No. 44-7 at 2.) It also explained that "[w]e are non-renewing your policy because the insurance company marked above will no longer be writing property and casualty insurance business with your agency. We recommend you contact your agent to obtain a replacement policy with another company." *Id.* The policyholders, David and Carolyn Stone, were not alive at the time of this notice, so Cynthia received and read the non-renewal notice sometime later in October 2013 and understood that the Policy was set to expire on December 9, 2013 (Filing No. 50 at 3).

On December 6, 2013, a voicemail message was left on the Stone Residence's answering machine by Tina Long ("Ms. Long"), a client account manager at Peoples. Ms. Long's message referenced the impending lapse in coverage and requested information about placing new insurance coverage. *Id.*

Later that same day, Cynthia returned the call to Ms. Long but got her answering machine (Filing No. 50 at 4). The answering machine greeting informed callers, "Please remember that this voice message system cannot be used to bind or alter insurance coverage." (Filing No. 44-6 at 4.) Cynthia left a return voicemail message on Ms. Long's answering machine stating, "coverage should remain the same as before, covering the same items and same dollar amounts." (Filing No. 50 at 4.) Cynthia believed that, based on this voicemail message exchange, Peoples was procuring insurance for the Stone Residence. *Id.* at 4–5. Cynthia acknowledged that after leaving the voicemail message on December 6, 2013, she did not communicate with Ms. Long until December 18, 2013, after a fire destroyed the Stone Residence. *Id.* at 4.

On December 18, 2013, the Stone Residence was destroyed by fire. That same day Cynthia called Peoples and spoke with Ms. Long, who informed Cynthia that the Policy had lapsed on December 9, 2013, and that coverage was not in place. *Id.* Ms. Long sent a letter to "David &

3

Carolyn R. Stone" on December 20, 2013, noting that the Policy had not been renewed as of December 9, 2013, consistent with the non-renewal notice sent by Westfield Insurance Company ([Filing No. 50-3 at 2](Filing No. 50-3 at 2)).  As a result, Westfield Insurance Company and Peoples would not provide coverage for the loss from the fire.

On December 10, 2014, the Estate filed this action in state court, seeking declaratory relief and damages based on a breach of an unspecified duty.  The case was removed to this Court and on October 14, 2015, Peoples filed its Motion for Summary Judgment.

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."  *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."  *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence."  *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

4

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.   DISCUSSION

In seeking summary judgment, Peoples asserts that it owed no duty of care to the Estate as a matter of law, thereby warranting judgment on the Estate's claim for breach of duty. In particular, Peoples argues that it owed no duty to procure insurance for the Estate because the voicemail message exchange, by itself, was not enough to form any agreement sufficient to trigger a duty to procure insurance. Ms. Long had not been given sufficient direction from the Estate regarding the desired insurance. When she called and left a message on the Stone Residence's answering machine on December 6, 2013, Ms. Long was not aware that the policyholders were deceased and did not know she was dealing with the Estate through its personal representative. Peoples asserts that when Cynthia left the return voicemail message, as a matter of law, this was a new entity and a new potential policyholder with whom Peoples had not previously communicated. Cynthia did not leave any details regarding the insurance coverage sought, and the answering machine greeting specifically informed callers that the voice message system could not be used to bind or alter insurance coverage.

Peoples points to Indiana case law in support of its argument that it had no duty to procure insurance for the Estate, for Cynthia, or for David and Carolyn Stone. Insurance agents potentially

have a general duty to procure insurance and a specific duty to advise their clients. *Filip v. Block*, 879 N.E.2d 1076, 1085 (Ind. 2008). Which duty applies in a particular case, if any, is a matter of law for courts to decide. *Id.* Peoples argues that, in this case, it owed neither duty as a matter of law. Citing *Indiana Restorative Dentistry, P.C. v. Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 268 (Ind. 2015), Peoples explains that liability for a failure to procure insurance requested by a policyholder can arise under either contract or tort theories, but under either theory, there must first be a "meeting of the minds"—an established agreement—regarding the material, essential elements of the insurance coverage. "Once an agreement is established under either theory, the duty to procure is the same." *Id.*

In Indiana, an oral or written contract of insurance requires a meeting of the minds of the parties upon the following essential elements of a contract: "(1) the subject of the insurance; (2) the risk or peril insured against; (3) the amount of coverage; (4) the limit and duration of the risk; and (5) the amount of the premium to be paid." *Stockberger v. Meridian Mut. Ins. Co.*, 395 N.E.2d 1272, 1279 (Ind. Ct. App. 1979). Also, "there is a corresponding duty on the part of the insured to provide the agent or broker with the information necessary to implement the policy." *Id.* The Indiana Court of Appeals held that "liability of the agent for failure to procure insurance obviously could not arise unless the agent had sufficiently definite directions from the principal to enable the agent to consummate the final insurance contract." *Id.*

Peoples asserts that no duty to procure insurance for the Estate ever arose because it never had any communications with the Estate. The voicemail message left by Ms. Long was directed to David and Carolyn Stone. Cynthia, acting for the Estate, left a message for Ms. Long, but then the two never had any communications to establish any meeting of the minds or an agreement to procure insurance before the fire occurred and Cynthia called to report the fire. Cynthia did not

follow up the voicemail message with another telephone call, an email, text message, letter or other form of communication.  (Filing No. 50-1 at 5).  The Estate, a new potential insured, was a completely different entity that could not seek an insurance policy through a voicemail message instructing that "coverage should remain the same as before, covering the same items and same dollar amounts."  Peoples was never provided with the essential elements and details it needed to procure insurance coverage.  Additionally, Peoples had no interaction with the policyholders for procurement purposes as the original Policy had been underwritten and procured by Wells Fargo and then later sold to Peoples.  In short, Peoples argues there was no agency relationship and no meeting of the minds that could give rise to a duty to procure insurance.

Regarding the second potential duty of an insurance agent—a duty to advise—Peoples asserts that it owed no duty to advise the Estate regarding insurance coverage because Peoples had no relationship, let alone a special, intimate relationship, with the Estate such that a duty to advise would arise under Indiana law.

The Estate responds to Peoples' argument regarding the duty to advise by acknowledging, "that is not a material issue in this case.  At no point did the insured seek 'advice' from the agent.  The duty undertaken and owed by agent was one of procurement and not of advice." (Filing No. 50 at 8.)  Therefore, the Court will not consider any potential duty to advise claim in this case.

Concerning the duty to procure insurance, the Estate argues that, under settled Indiana law, one who agrees to procure insurance on behalf of another becomes the agent of the proposed insured and incurs a duty to use reasonable care to procure the desired insurance, citing *Anderson Mattress Co. v. First State Ins. Co.*, 617 N.E.2d 932, 939 (Ind. Ct. App. 1993) and *Morgan v. Tackitt Ins. Agency, Inc.*, 852 N.E.2d 994, 1000 (Ind. Ct. App. 2006).  "Indiana law requires an agent retained to procure insurance for another to use reasonable skill, care, and diligence to obtain

the desired insurance." *Anderson Mattress*, 617 N.E.2d at 938–39. "An agent may thus be held to answer in damages if his principal suffers a loss after the agent has failed to obtain insurance. The agent also incurs a duty to inform the principal if he is unable to procure the requested insurance." *Id.* at 939.

The Estate asserts that Peoples never obtained insurance for the Stone Residence and never informed the Estate that insurance had not been procured, and thus, its claim for breach of the duty to procure should survive summary judgment. The Estate points to the voicemail message exchange between Ms. Long and Cynthia to support its position that Peoples had all the information it needed to procure insurance for the Estate. If Peoples needed more information, the Estate contends that it could have called Cynthia again. The Estate further argues that Peoples also had the Policy declarations page and endorsements and could have used those documents to obtain the information necessary to fulfill Cynthia's request that "coverage should remain the same as before, covering the same items and same dollar amounts."

Replying to the Estate's argument, Peoples asserts that the Estate fails to address the core issue in this case: there was no meeting of the minds, no agreement in the first place, that could give rise to a duty, and with no duty, there could be no breach of a duty. Instead, the Estate was silent on the issue of the existence of any duty and immediately argued breach.

The designated evidence supports granting summary judgment in favor of Peoples. The Policy for David and Carolyn Stone was procured through Wells Fargo and later sold to Peoples. Peoples had no interaction with the Stones regarding the procurement of insurance. Almost two months before the Policy was to expire, Westfield Insurance Company provided a non-renewal notice, which Cynthia read and understood. Two voicemail messages were exchanged three days before the Policy expired. Cynthia left a voicemail message for Ms. Long (the two women had

never before communicated), asking generically that the "same coverage" be provided to a new legal entity—the Estate rather than the policyholders, David and Carolyn Stone. However, Ms. Long's answering machine greeting specifically informed callers that "this voice message system cannot be used to bind or alter insurance coverage." The undisputed facts show that there was no meeting of the minds or an agreement to procure insurance that could give rise to a duty to procure. While Cynthia testified in her deposition that she believed Peoples was procuring insurance for the Stone Residence based on the voicemail message exchange, her mistaken belief does not create a dispute of material fact regarding the lack of a meeting of the minds to create a duty to procure in the first place.

With no meeting of the minds or agreement between the Estate and Peoples to procure insurance for the Stone Residence, there is no basis to find that any duty existed of which Peoples could breach. Therefore, summary judgment in favor of Peoples is appropriate on the Estate's claim for breach of duty.

## IV.   CONCLUSION

For reasons herein, Defendant Peoples Insurance Agency, LLC's Motion for Summary Judgment ([Filing No. 43](#)) is **GRANTED**.[2]  Final judgment will issue under separate order.

**SO ORDERED.**

Date: 8/24/2016

_Tanya Walton Pratt_
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

---

[2] At the conclusion of its Summary Judgment Response Brief, the Estate asks the Court to defer ruling on the Motion for Summary Judgment pursuant to Rule 56(d) to allow the Estate to further develop its argument and conduct additional discovery. However, the Estate already has filed its response brief, and Peoples has filed its reply brief. The Court declines the Estate's request to defer judgment pursuant to Rule 56(d). *See Spierer v. Rossman*, 2014 U.S. Dist. LEXIS 138939, at *6 (S.D. Ind. Sept. 30, 2014) ("The Local Rules do not provide for the filing of a 'supplemental response,' and only permits the filing of a surreply in instances where the movant cites new evidence in the reply or objects to the admissibility of evidence cited in the response."); *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. Ind. 2015) (affirming denial of Rule 56(d) request where request was made contemporaneously with the filing of a response brief).

DISTRIBUTION:

Matthew R. Lemme
attorney@indiana.usa.com

Logan C. Hughes
REMINGER CO., LPA
lhughes@reminger.com

Anthony L. Holton
REMINGER CO., LPA
aholton@reminger.com

Marcum Jarvis Lloyd
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
mlloyd@smithfisher.com

Mark R. Smith
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
msmith@smithfisher.com

Neal F. Bailen
STITES & HARBISON, LLP
nbailen@stites.com